UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN ST. JAMES,                                  Case No. 13-10574

            Plaintiff,                    Gerald E. Rosen
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 17)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On February 11, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gerald E. Rosen referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 12, 17). Plaintiff also filed a reply in support her motion for summary judgment. (Dkt. 18).

B.    Administrative Proceedings

Plaintiff filed the instant claims on November 30, 2009, alleging that she became disabled beginning April 26, 2008. (Dkt. 8-2, Pg ID 38). The claim was initially disapproved by the Commissioner on May 19, 2010. (Dkt. 8-2, Pg ID 38). Plaintiff requested a hearing and on May 6, 2011, plaintiff appeared with a representative before Administrative Law Judge (ALJ) Mark B. Greenburg, who considered the case de novo. In a decision dated May 24, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 38-51). Plaintiff requested a review of this decision. The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on December 22, 2012, denied plaintiff's request for review. (Dkt. 8-2, Pg ID 28-32); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**DENIED** in part, and that the findings of the Commissioner be **REVERSED** in part and **AFFIRMED** in part, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 49 years of age at the time of the most recent administrative hearing and 46 years old on the alleged onset date.  Plaintiff has past relevant work as a chore provider and kitchen worker.  (Dkt. 8-2, Pg ID 49).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 8-2, Pg ID 41).  At step two, the ALJ found that through the date last insured, the claimant had the following severe impairments: fibromyalgia versus lupus; degenerative disc disease; degenerative joint disease; asthma; restless legs syndrome; affective disorder; borderline intellectual functioning; anxiety; history of learning disorder; and pain disorder.  (Dkt. 8-2, Pg ID 41).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 42).  The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined

in 20 CFR 404.1567(a) and 416.967(a) except that she can lift slightly less than 10 pounds frequently, and must be given the opportunity to alternate positions for between 1 and 2 minutes every 45-60 minutes as needed to relieve pain. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She is limited to occasional reaching overhead bilaterally, and frequent, as opposed to constant, fingering with the bilateral upper extremities. The claimant should avoid even moderate exposure to extreme cold, heat, and humidity, and should avoid all exposure to fumes, dusts, and gases. The claimant can only perform work involving 1- and 2-step tasks that is simple and repetitive with simple verbal instructions, and she is not capable of work requiring constant, close attention to detail. The claimant requires occasional supervision, and is not capable of work at more than a regular pace.

(Dkt. 8-2, Pg ID 44).

At step four, the ALJ found that plaintiff could not perform her past relevant work.  (Dkt. 8-2, Pg ID 49).  At step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform. Based on the foregoing, the ALJ concluded that plaintiff was not under a disability from the claimed onset date through the last date insured.  (Dkt. 8-2, Pg ID 50).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ failed to properly apply res judicata to plaintiff's disability determination.  The ALJ found plaintiff to have a RFC that differed from the prior ALJ's decision.  While some of these differences were

explained, such as an increased restriction to sedentary rather than light work, not all differences were addressed despite the doctrine of res judicata applying to this case. The ALJ indicated in the decision that the plaintiff's additional medical evidence regarding her "history of fibromyalgia, which was not available to the prior Administrative Law Judge" justified a reduction in the exertional categories (Tr. 12); however, the current decision did not explain why it found plaintiff's limitations regarding her need to change position and her inability to perform repetitive handling activities were not as severe as the previous ALJ decision, especially when the current decision did not find improvement in those areas. As a result, plaintiff contends that decision failed to comply with res judicata principles, and the resultant RFC is not supported by substantial evidence.

In a prior claim adjudicated by an ALJ on March 6, 2008, plaintiff was denied benefits. (Tr. 11 ). The ALJ in that claim found plaintiff had the following residual functional capacity: the ability to perform work at the light exertional level; the ability to change positions at will; no repetitive bending, twisting, or turning; only occasional crawling, squatting, kneeling, or climbing; no repetitive pushing, pulling, gripping, or grasping with the upper extremities; no operation of foot controls; only simple, repetitive work involving simple, verbal instructions, not requiring constant, close attention to detail or work at more than a regular pace; only occasional supervision. (Tr. 11). In the present decision, the

(subsequent) ALJ found the following residual functional capacity:  the ability to perform sedentary work, lifting slightly less than 10 pounds frequently; the opportunity to alternate positions for between 1 and 2 minutes every 45-60 minutes as needed to relieve pain; only occasionally climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; occasional reaching overhead bilaterally; frequent, as opposed to constant, fingering with the bilateral upper extremities; avoiding even moderate exposure to extreme cold, heat, and humidity, and avoiding all exposure to fumes, dusts, and gases; only work involving 1 and 2 step tasks that is simple and repetitive with simple verbal instructions; and no work requiring constant, close attention to detail, with only occasional supervision and no work at more than a regular pace. (Tr. 17).  In making this RFC finding, the ALJ cited to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and res judicata principles three times.  (Tr. 11, 14, 17).  Despite the citation to these res judicata principles, plaintiff argues that the decision did not adopt all portions of the prior RFC and did not adequately explain all of the deviations from the prior RFC.  Two of these deviations, namely the frequency of changing position and the limitations regarding gripping and grasping represent significant changes, and therefore violate *Drummond*.  126 F.3d at 842.

SSR 96-9p addresses the inclusion of a sit/stand option or change in

position in a claimant's RFC, noting that an individual may need to alternate sitting, standing, or walking periodically, and that where this need cannot be accommodated by scheduled breaks and the lunch period, "the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p. The SSR emphasizes the vast possibilities as to the frequency of the need to change positions, noting that "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing," and that "the extent of the erosion will depend on ... the frequency of the need to alternate sitting and standing and the length of time needed to stand" in sedentary work. SSR 96-9p. In the prior ALJ decision denying benefits in 2008, the ALJ found plaintiff required the ability to "change positions at will." (Tr. 11 ). Despite the doctrine of res judicata, the current decision included a limitation to the need for an "opportunity to alternate positions for between 1 and 2 minutes every 45-60 minutes as needed to relieve pain." (Tr. 17). Plaintiff contends that the current limitation is less restrictive than the original limitation and violates *Drummond* without a finding of improvement supported by substantial evidence. 126 F.3d at 842. The only evidence in plaintiff's file suggesting that she only needed to change positions every 45-60 minutes is that of the State Agency medical consultant, Daniel Dolanski, DO. (Tr. 21). The decision did not explain why Dr. Dolanski's opinion proposed such an improvement over the original RFC relating

to the change of positions, nor did it find that her condition had improved in any way. In fact, in the same paragraph in which the ALJ found plaintiff required a change of position every 45-60 minutes, the ALJ also indicated that plaintiff's new diagnosis of fibromyalgia reduced her from light to sedentary capabilities, suggesting that her condition actually worsened rather than improved. (Tr. 22). Yet despite the lack of improvement, and resulting requirement to adopt the prior ALJ decision in this area of functioning, the subsequent ALJ created a new RFC, which, according to plaintiff, violated *Drummond*. Additionally, since the decision did not accurately state the frequency and duration of plaintiff's need to change positions, substantial evidence does not exist to support a finding of not disabled. If res judicata is applied to this portion of the RFC, then with the addition of new restrictions, including a significant decrease in the exertional abilities from light to sedentary work, the extent to which the occupational base is eroded in plaintiff's case is unknown. As a result, plaintiff contends that a remand is warranted in order to implement an RFC that applies the principles of res judicata to those limitations that were not found to have improved, and to determine what effect the full RFC has on the occupational base.

According to plaintiff, Social Security Rulings have addressed the many possible manipulative limitations associated with a claimant's hands and the effects that limitations in this area could have on the occupational base. SSR 96-9p

acknowledges that "most unskilled sedentary jobs require good use of both hands and fingers; i.e., bilateral manual dexterity." SSR 83-14 also emphasizes this point, noting that "bilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations." When specifying the difference between gross hand manipulation, such as handling, gripping, or grasping, and fine finger manipulation, such as fingering or pinching, Social Security Rulings also provide guidance on distinguishing the two. SSR 85-15 separates handling/gripping/grasping and fingering into two distinct categories, noting that "seize, hold, grasp, or turn an object" falls into "handle," while "fine movements" of small objects require the "use of fingers to pick, pinch, etc." SSR 85-15 also provides that "reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities," with 'handling" including things like seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, and "fingering" involving "picking, pinching, or otherwise working primarily with the fingers." The SSR notes that reaching and handling "are activities required in almost all jobs" and that "significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." SSR 85-15. As a result, a Vocational Expert should be consulted. SSR 85-15, 96-9p.

In the prior decision denying benefits in 2008, the ALJ found plaintiff to

have an RFC including a limitation that plaintiff "could not perform repetitive pushing, pulling, gripping, or grasping with the upper extremities." (Tr. 11). In the current decision, plaintiff points out that the ALJ found plaintiff to be limited to "frequent, as opposed to constant, fingering with the bilateral upper extremities." (Tr. 17). The ALJ found no limitations with respect to gripping or grasping (handling). Despite citing *Drummond* multiple times, plaintiff contends that the decision did not abide by the principles of res judicata and failed to adopt the previous RFC with respect to handling, nor did it find that there had been improvement in this area. Instead, the decision only addressed "fingering," noting that "the claimant's cervical degenerative disc disease, as well as the pain and swelling in her upper extremities, justifies a limitation against overhead reaching and more than frequent fingering," while "further limitations are not justified." (Tr. 19). The decision later stated that "the claimant's fibromyalgia, as well as her cervical degenerative disc disease, also limits her ability to use her upper extremities for reaching and fingering." (Tr. 22). With the addition of fibromyalgia as a new severe impairment, the evidence suggests that plaintiff's limitations in handling worsened. Further, medical evidence establishes her hand symptoms, including medical records showing swelling on hands and generalized pain with stiffness, and repeated pain and swelling in both upper extremities upon physical exam. (Tr. 355, 357, 418, 426). As established by the SSRs, handling

(including gripping and grasping) and fingering are two completely different limitations that have individual erosive effects on the occupational base available to a claimant; replacing handling limitations with fingering limitations does not comply with res judicata or *Drummond*. Where there is no finding of improvement, the doctrine of res judicata applies and the subsequent ALJ is bound by the findings of a previous ALJ. *Drummond*, 126 F.3d at 842. Where, as here, the subsequent ALJ failed to adopt the prior ALJ's findings without finding improvement, and without proper explanation of the substantial evidence supporting alleged improvement, error has occurred and a remand is appropriate.

If res judicata were applied, plaintiff argues that her RFC should have included a limitation to a minimum of no repetitive gripping and grasping, as well. Without a full and accurate RFC, substantial evidence does not exist to support a finding of not disabled. With the addition of new restrictions, including a significant decrease in the exertional abilities from light to sedentary work, the extent to which the occupational base is eroded in plaintiff's case is unknown. As a result, plaintiff maintains that a remand is also warranted in order to implement an RFC that applies the principles of res judicata to those limitations that were not found to have improved, and to determine what effect the full RFC has on the occupational base.

C.   <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ properly re-evaluated plaintiff's physical limitations in light of new and material evidence. (Tr. 17). The ALJ explained that there was new and material evidence that supported revised physical limitations in the RFC finding, although plaintiff's "previously found mental impairments and limitations" were the same and therefore did not require revision. (Tr. 17). The ALJ discussed evidence pertaining to plaintiff's fibromyalgia, degenerative disc disease, asthma, and restless leg syndrome that had accumulated since the prior decision. (Tr. 18-19). In light of new and material evidence regarding plaintiff's physical limitations, the Commissioner contends that the ALJ was not bound by the physical limitations in the prior ALJ's RFC finding.

Plaintiff argues that the ALJ violated *Drummond* because the ALJ's sit stand limitation—affording her the ability to alternate positions for one to two minutes every 45 to 60 minutes as needed to relieve pain—is less restrictive than the original "at will" limitation. According to the Commissioner, the ALJ's sit-stand limitation was supported by new and material evidence in the record. For example, State agency medical consultant Dr. Dolanksi's March 2010 report indicated that plaintiff needed the ability to alternate positions for one or two minutes every 45 to 60 minutes as needed for pain relief. (Tr. 95). Dr. Dolanski

considered new and material evidence that was not presented to the prior ALJ, such as plaintiff's December 2009 treatment notes stating that her pain was better with ibuprofen and her lupus was improved.  (Tr. 76, 351, 353).  The Commissioner also points out that Dr. Dolanski's sit-stand limitation was completely consistent with plaintiff's 2011 testimony that she could sit for about an hour at a time, after which she needed to "get up and move around a little bit" before sitting down again.  (Tr. 39).

In addition, as the ALJ explained, MRIs from 2011—after the date of the prior decision—indicated that, although plaintiff had a tiny central disk herniation in her lumbar spine, there was no spinal stenosis or neural foraminal stenosis, and the distal conus was normal in signal intensity.  (Tr. 18, 457).  The ALJ also noted that the record contained few reports of reduced ranges of motion (Tr. 426, 436) or gait problems (Tr. 18, 418, 432), and medical records showed plaintiff was neurologically intact.  (Tr. 18, 281, 283).  As the ALJ discussed, plaintiff reported improvement of her back pain and function with Norco.  (Tr. 19, 447).  Also, as the ALJ noted, Dr. Hautea described plaintiff's fibromyalgia as improved (Tr. 19, 432), and plaintiff was not prescribed physical therapy.  (Tr. 20).  Her rheumatologist's "strongest recommendation" was to increase her level of fitness. (Tr. 20, 439).  Notably, as the ALJ discussed, the prior ALJ did not consider plaintiff's "work as a chore provider."  (Tr. 22).  Plaintiff performed part-time

kitchen work and housecleaning for two seasons, each consisting of six to seven months.  (Tr. 20, 35, 183, 190, 358).

Next, plaintiff argues that the ALJ violated *Drummond* by not finding limitations on gripping and grasping (i.e., handling), as the prior ALJ had. Plaintiff points out that the current ALJ imposed restrictions on fingering and overhead reaching, but found that "further limitations are not justified."  (Tr. 19). However, the ALJ's upper extremity limitations— to occasional reaching overhead bilaterally and frequent fingering with the bilateral upper extremities— were sufficient in light of new and material evidence in the record.  Significantly, Dr. Dolanksi's March 2010 report indicated that plaintiff was limited to occasional overhead reaching bilaterally and frequent fingering (fine manipulation) bilaterally, but was unlimited in her ability to handle (gross manipulation).  (Tr. 21, 95).  Also, as the ALJ discussed, a cervical spine MRI from February 2011 showed only mild degenerative changes without spinal stenosis or neural foraminal stenosis.  (Tr. 18, 456).

Although plaintiff argues that medical records document pain and swelling in her hands and upper extremities, pain does not necessarily demonstrate functional limitations.  Tellingly, as the ALJ noted, plaintiff was able to cook, clean, do laundry, and care for herself and her disabled son.  (Tr. 20, 48). Although plaintiff testified that her daily activities were limited by her ability to

bend, reach her arms upward, and walk, she did not mention difficulties with gripping and grasping. (Tr. 37). Also, as discussed above, plaintiff's fibromyalgia was improved, she was not prescribed physical therapy, and plaintiff had "work[ed] as a chore provider" that was not considered by the prior ALJ. (Tr. 19, 20, 22, 35, 183, 190, 358, 432, 439). Thus, the ALJ reasonably concluded that, other than the reaching and fingering limitations incorporated in his RFC finding, "further limitations [we]re not justified based on the relatively normal findings on physical examination and the record as a whole." (Tr. 19). Therefore, the Commissioner contends that because the ALJ discussed new and material evidence regarding plaintiff's physical limitations, *Drummond* did not bind the ALJ to the physical limitations in the prior ALJ's RFC finding. Thus, the Commissioner asserts that substantial evidence supports the ALJ's decision.

### D.   Plaintiff's Reply

Plaintiff outlined the differences between the previous ALJ decision and the current ALJ decision that were not explained and should have been the same based on res judicata in her initial brief. According to plaintiff, defendant repeatedly and erroneously asserts that these differences are of no concern because the ALJ was not bound by res judicata in this case. *Drummond* establishes that prior findings concerning a claimant's RFC are binding absent evidence of an improvement or change in condition since the prior hearing. 126 F.3d at 837; (Tr. 11).

Additionally, it is the Commissioner's burden to prove that substantial evidence supports a change in circumstance in order to escape the principles of res judicata. *Drummond*, 126 F.3d at 843.  While the decision specifically cites *Drummond* on three separate occasions, indicating the application of the res judicata principle, (Tr. 11, 14, 17), the ALJ makes no finding as to improvement in either of the areas of functional limitations plaintiff initially briefed: positional changes and gripping/grasping.

The Commissioner points to several pieces of medical evidence she claims establish a change in circumstances for the two areas plaintiff cited: namely the frequency of a required change in position and the omission of any gripping or grasping (handling) restrictions from the RFC.  However, this recitation of medical evidence is flawed for multiple reasons.  First, much of this evidence is a post-hoc analysis of evidence conducted by defendant in her brief, and is not contained in the decision itself.  The Supreme Court of the United States has found that it is impermissible for federal courts to reach beyond the findings of an administrative body by utilizing post-hoc rationalization to justify the reviewing court's ruling.  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  According to plaintiff, the Commissioner provides a cursory medical summary of evidence that could possibly have been used to establish a change in circumstance, but was not analyzed by the ALJ in such a way.  Plaintiff contends that the lack of explanation

Report and Recommendation
Cross-Motions for Summary Judgment
*St. James v. Comm'r*; Case No. 13-10574

by the ALJ in these two differing areas is indicative of the Commissioner's inability to meet the burden of proving plaintiff's condition changed and her RFC should be less restrictive with respect to changing position and gripping/grasping.

Further, while the Commissioner argues that the recitation of portions of the medical evidence indicates that the ALJ fully analyzed and considered the effect plaintiff's condition had on her RFC, nowhere does the Commissioner explain how such a brief mentioning of a few medical records constitutes discussion, analysis, and evidentiary support. *See* SSR 96-8p. For example, the Commissioner indicated that the ALJ cited to a cervical spine MRI showing "only mild degenerative changes without spinal stenosis or neural foraminal stenosis" as adequate discussion of why plaintiff's gripping/grasping restriction was no longer necessary in the present RFC. However, plaintiff points out that the ALJ never discusses this MRI in terms of the gripping and grasping restrictions, nor does the ALJ explain why this MRI leads to the elimination of gripping and grasping from plaintiff's RFC. (Tr. 18). According to plaintiff, while a spinal MRI could factor in to a number of areas of functional limitation, it is misleading to suggest that the mentioning of a spinal MRI constitutes analysis proving an improvement in gripping and grasping. "A fact summary, no matter how detailed, is not analysis. The latter is what is critical." *Kerr v. Comm'r of Soc. Sec.*, 2013 WL 388987 at *10 (E.D. Mich. 2013) (report and recommendation), adopted, 2013 WL 388176

(E.D. Mich. 2013).  The lack of analysis is also revealing of the ALJ's belief that res judicata applied, and that the changes in the RFC with respect to position changes and gripping/grasping were made in error.

Plaintiff contends that, ultimately, the ALJ was bound by res judicata unless he met his burden of proving a change in circumstances.  *Drummond*, 126 F.3d 842-43.  According to plaintiff, the Commissioner has not met that burden, as the ALJ made no finding of improvement in the areas of positional changes and gripping/grasping, and res judicata should have been applied to plaintiff's limitations regarding these restrictions.  Since a VE was not consulted regarding the complete and accurate list of plaintiff's limitations (combining the prior limitations with the new limitations specifically found to have changed since the last decision), plaintiff argues that the decision is not supported by substantial evidence and a remand is warranted.

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusion

Generally, principles of *res judicata* require that the administration be bound by a prior decision unless a change of circumstances is proven on a subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a

claimant's condition has improved, findings issued by an ALJ as part of a prior

disability determination are binding on an ALJ in a subsequent proceeding.

*Drummond*, 126 F.3d at 841. The Commissioner bears the burden to prove

changed circumstances so as to escape being bound by the principles of *res*

*judicata*. *Id*. at 842-43 ("We reject the Commissioner's contention that the Social

Security Administration has unfettered discretion to reexamine issues previously

determined absent new and additional evidence ....  Just as a social security

claimant is barred from relitigating an issue that has been previously determined,

so is the Commissioner.").  Acquiescence Ruling 98-4(6), issued post-*Drummond*,

instructs that the agency "must adopt [the residual functional capacity finding]

from a final decision by an ALJ or the Appeals Council on the prior claim in

determining whether the claimant is disabled with respect to the unadjudicated

period unless there is new and material evidence relating to such a finding...."  The

Sixth Circuit applies collateral estoppel to "preclude reconsideration by a

subsequent ALJ of factual findings that have already been decided by a prior ALJ

when there are no changed circumstances requiring review."  *Brewster v.*

*Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

　　　To the extent any confusion may exist regarding the applicable standard,

*Drummond* trumps the acquiescence ruling.  *Harris v. Astrue*, 2010 WL 3909495

(S.D. Ohio 2010), *adopted by* 2010 WL 3909493 (S.D. Ohio 2010).  As the *Harris*

court pointed out, the "Commissioner's Acquiescence Rulings-like the Commissioner's Regulations-are not the supreme law of the land. 'It is, emphatically, the province and duty of the judicial department, to say what the law is,' *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137 (1803), [']and the [Commissioner] will ignore that principle at [her] peril.'" *Harris*, at *5, quoting *Hutchison for Hutchison v. Chater*, 99 F.3d 286, 287-88 (8th Cir. 1996) (other citations omitted) (brackets in *Hutchison*). *Harris* questions whether AR 98-4(6) is consistent with *Drummond* because the Ruling does not use the phrase "improvement in a claimant's condition" when instructing ALJs how to apply *Drummond*. Rather, it allows ALJs to use "new and material evidence relating to such a [prior] finding ..." to avoid administrative *res judicata* without considering whether such evidence also shows improvement in a claimant's condition. *Harris*, at *5. According to *Harris*, "[t]his leaves an ALJ free to overlook the Commissioner's burden, under *Drummond*, to point to evidence of improvement in a claimant's condition." *Id.*, citing *Drummond*, 126 F.3d at 841-42.

In the 2008 decision, the ALJ concluded that plaintiff was limited to no repetitive pushing, pulling, gripping, or grasping with the upper extremities. In the new decision, the ALJ explained that he gave Dr. Dolanski's opinion regarding plaintiff's ability to finger frequently "great weight" and noted that "new evidence does not reflect symptoms or pathology requiring greater limitations." (Dkt. 8-2,

Pg ID 48).  Plaintiff's treating physician opined that plaintiff could not use her extremities for repetitive activities.  This opinion was given little weight because it was given one month after the alleged onset date and Dr. Gedeon also noted that plaintiff was improving.  (Dkt. 8-2, Pg ID 48).  In fact, Dr. Gedeon's opinion is more consistent with the limitations contained in the first RFC as to plaintiff's upper extremities.  The ALJ simply does not explain how Dr. Dolanski's opinion regarding "fingering" overcomes the res judicata effect of the prior RFC limitation of "no repetitive pushing, pulling, gripping, or grasping with the upper extremities."  In the view of the undersigned, the Commissioner simply did not meet her burden of showing an improvement in this aspect of plaintiff's RFC.  General "improvement" in plaintiff's "condition" simply does not satisfy the analytical and evidentiary burdens placed on the Commissioner in *Drummond*.

As to the remaining justifications offered by the Commissioner as to the reasons why the ALJ's new RFC is supported by substantial evidence, the undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, *6 (6th Cir. 1993) (unpublished opinion), *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted).  "Courts are not at liberty to speculate on the basis of

an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991). The Commissioner points to the following evidence to justify the ALJ's departure from the earlier RFC in this respect: Dr. Dolanksi's March 2010 report indicated that plaintiff was limited to occasional overhead reaching bilaterally and frequent fingering (fine manipulation) bilaterally, but was unlimited in her ability to handle (gross manipulation) (Tr. 21, 95); and a cervical spine MRI from February 2011 showed only mild degenerative changes without spinal stenosis or neural foraminal stenosis. (Tr. 18, 456). Nothing in the ALJ's decision, however, connects that dots and explains how this evidence satisfies the Commissioner's burden under *Drummond*. Dr. Dolanski's opinion does not point to any medical evidence to support any conclusion that plaintiff went from "no repetitive pushing, pulling, gripping, or grasping with the upper extremities" to only being limited to frequent fingering (fine manipulation) bilaterally and being unlimited in her ability to handle (gross manipulation).

Plaintiff also argues that the ALJ failed to satisfy the burden of establishing that she had improved such as the prior "at will" sit/stand limitation was no longer necessary and plaintiff only now requires the ability to change positions ever 45-60 minutes. The Commissioner argues that this change is supported by Dr.

Dolanski's opinion and plaintiff's own testimony. Plaintiff testified that she could sit for about an hour or so and then would have to get up and move around. She also testified that she could sit for about 5 hours in an 8 hour work day. The ALJ questioned the VE as to these specific limitations and the VE testified that her conclusions about available jobs would not change based on these limitation. (Dkt. 8-2, Pg ID 50). While the ALJ's analysis could have been clearer as to why the earlier RFC on the changing position limitation had changed, in light of plaintiff's own testimony of her ability to sit and how often she needed to change positions, the undersigned finds no error here.

Where, as here, the subsequent ALJ failed to adopt the prior ALJ's findings regarding plaintiff's upper extremity limitations without finding improvement, and without proper explanation of the substantial evidence supporting alleged improvement, error has occurred and a remand is appropriate. The undersigned agrees with plaintiff that a remand is warranted in order to implement an RFC that applies the principles of res judicata to those limitations that were not found to have improved, and to determine what effect the full RFC has on the occupational base.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in

Report and Recommendation
Cross-Motions for Summary Judgment
*St. James v. Comm'r*; Case No. 13-10574

part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, and that the findings of the Commissioner be **REVERSED** in part and **AFFIRMED** in part, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 4, 2014                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 4, 2014, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Jessica Brissette, Ameenah Lewis and Susan
DeClercq.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*St. James v. Comm'r*; Case No. 13-10574